358 So.2d 1134 (1978)
CALVARY CHURCH, INC., Appellant,
v.
Robert SIEGEL and Jacob L. Bockol, Appellees.
No. 77-426.
District Court of Appeal of Florida, Third District.
May 9, 1978.
Rehearing Denied June 9, 1978.
Snyder, Young, Stern, Barrett & Tannenbaum and William L. Rogers, North Miami Beach, for appellant.
Leo Greenfield, North Miami, for appellees.
Before PEARSON, NATHAN and KEHOE, JJ.
PEARSON, Judge.
The defendant, Calvary Church, Inc., appeals a final judgment entered after a trial before the court without jury. The judgment is based upon a complaint by appellees Robert Siegel and Jacob L. Bockol, alleging that the appellant conspired with another defendant, Calvery Temple, Inc., to defeat Siegel and Bockol's contract to purchase real property owned by Calvery Temple, Inc. The question presented is whether the facts which were proved at trial, when viewed in the light most favorable to the plaintiffs, established a prima facie case sufficient to support the judgment.
The trial judges' finding of fact are as follows:
"1. The Defendant, CALVARY TEMPLE, INC., [not an appellant here] was the owner of a parcel of land and certain improvements thereon, located at 1301 West 68th Street, Hialeah, Florida, . .
* * * * * *
2. The property and all improvements, were listed for sale by CALVARY TEMPLE, INC. with the Keyes Company on November 13, 1973 at a listed sales price of $232,000.00 `all cash or cash above the existing mortgage, or that purchaser would obtain new financing at his own expense'.
3. Plaintiff, ROBERT SIEGEL, was the owner of an interest in a shopping center located in close proximity to the church premises and was familiar with the property and negotiated for the purchase of the said church property over an extended period of time.
4. On December 18, 1973 CALVARY CHURCH, INC., [Sic  the agreement was with Calvery Temple, Inc.] being in a *1135 severe financial crisis, entered into an agreement with SIEGEL, by way of a brief letter contract, to sell the property and all improvements to SIEGEL for the sum of $121,000.00 subject to two mortgages: one held by Alah Farms and a second by Melrose Properties. The agreement provided that if Allapattah Baptist Church put up a cash deposit of no less than $20,000.00 by December 19, 1973 at 2:00 P.M., the agreement with SIEGEL would become null and void. The agreement further provided that `time is of the essence'. No funds were deposited by the Allapattah Baptist Church within the deadline, and the SIEGEL agreement therefore remained in full force and effect.
5. On December 19th and 20th, in anticipation of the elimination of the use of the property in question as a church, both Plaintiffs filed an application with the Board of Business Regulation, to obtain a liquor license for a premises which was in close proximity to the church, and where previously due to the proximity of the church, the sale of liquor had been prohibited.
6. On January 2, 1974 an inventory was taken by SIEGEL and REV. HAVENER of CALVARY TEMPLE, INC. of the personal property; the abstract was delivered to SIEGEL's attorney in anticipation of the closing which was to be completed early in January, upon the return of HAVENER from an out of town trip.
7. During this same period, the exact time being undetermined, Rev. Havener had conversations with Rev. Jones, a licensed, experienced real estate salesman, licensed in Florida since 1971, and in Pennsylvania for seven years prior thereto, of CALVARY CHURCH, INC. toward the end of selling the property to the Defendant, CALVARY CHURCH, INC. During these conversations, or shortly thereafter, Jones became aware of the fact that SIEGEL had entered into a contract for the purchase of the property from CALVARY TEMPLE, INC.
8. On January 14, 1974 CALVARY CHURCH, INC. entered into a contract for the purchase of the property which was under contract to SIEGEL and agreed to purchase same for the total amount of $130,000.00, subject to certain other terms and conditions. On that same date, SIEGEL entered into an agreement with JACOB L. BOCKOL to sell to BOCKOL an undivided interest in his contract to purchase.
9. The Plaintiffs, after January 14, 1974, became aware of the fact that CALVARY TEMPLE, INC. had entered into a second contract to sell the property to CALVARY CHURCH, INC. and thereupon on the 18th day of January, 1974 the Plaintiffs instituted an action for specific performance and damages, against CALVARY TEMPLE, INC., cause No. 74-1695, and caused a Lis Pendens to be filed against the property.
10. At a date subsequent to January 18, 1974, but prior to February 19, 1974, Rev. Jones of CALVARY CHURCH, INC. met with his counsel and reviewed with his counsel all of the pleadings filed by the Plaintiffs and thereafter determined that notwithstanding the claim of the Plaintiffs, CALVARY CHURCH, INC., they would proceed to close on the said property. At that time CALVARY CHURCH, INC. recognized the risks involved but determined that notwithstanding the SIEGEL contract it would go forward to conclude the purchase of the property. Having made such decision, it then negotiated an amendment to the deposit receipt agreement whereby it was agreed that the price of the property would be reduced from $130,000.00 to $121,000.00, in consideration of which CALVARY CHURCH, INC. would hold CALVARY TEMPLE, INC. and the Rev. R.T. Havener harmless from any damages flowing from the law suit instituted by the Plaintiffs. As part of the indemnification CALVARY CHURCH, INC. agreed that it would provide legal counsel for the purpose of the lawsuit and would provide CALVARY TEMPLE, INC. with counsel. Thereupon the transaction was *1136 closed and the property conveyed by CALVARY TEMPLE, INC. to CALVARY CHURCH, INC. The deed conveying the property specifically provided: `Grantee is on notice of a specific performance suit filed in the Circuit Court of the Eleventh Judicial Circuit, in and for Dade County, Florida, Case No. 74-1695, in which Robert Siegel and Jacob L. Bockol are the Plaintiffs and Calvary Temple, Inc. is the Defendant. Said suit is still pending in the Circuit Court and no warranties are made as to the outcome of said litigation.'"
Based upon these facts, the trial judge found liability against Calvary Church for a conspiracy to defeat Siegel's contract to purchase the property involved. In an attempt to achieve clarity, we reiterate that there were originally two defendants: (1) Calvary Temple, the owner of the property, which will be referred to as the "Temple" (the Temple is not an appellant) and (2) Calvary Church, the purchaser of the property, which will be referred to as "Calvary Church" (Calvary Church is the present appellant).
Calvary Church urges under its first point that the court erred in finding a conspiracy to defeat Siegel's contract to purchase because the claimed contract was insufficient as a matter of law to confer a right to purchase upon the plaintiffs. The Siegel-Temple agreement was, in pertinent part, as follows:
"In consideration (of) the sum of $10.00 and other valuable consideration we agree to sell to Robert Siegel ... [the property involved] ... and all [buildings] thereon described with content[s] for $121,000.00 less the mortgage held by Allah Farms and Melrose Properties at the time of transfer of title. The total price shall not exceed $121,000.00, Terms shall be arranged for the balance."
It is argued that this agreement was in reality an agreement to enter into a future contract.
We must determine whether the Siegel-Temple agreement was sufficient to support the action. In Franklin v. Brown, 159 So.2d 893 (Fla. 1st DCA 1964), the court pointed out that for one to have a cause of action in tort against a wrongdoer who has willfully or maliciously interfered with the injured party's favorable business relationship with another, it is not necessary that the business relationship be founded upon an enforceable contract. Citing Chipley v. Atkinson, 23 Fla. 206, 1 So. 934 (1887); and Dade Enterprises, Inc. v. Wometco Theaters, Inc., 119 Fla. 70, 160 So. 209 (1935). The holding in Franklin v. Brown is that a complaint which alleges wanton conduct by the defendant intentionally destroying the subject matter of the contract between the plaintiff and another, or unlawfully rendering performance under the contract impossible, states a cause of action in tort for unlawful interference with the contract between the plaintiff and another. We hold that the agreement between Siegel and the Temple, incomplete as it was, constituted a contract sufficient to set forth an advantageous contractual undertaking, whether it was to sell or to contract to sell. Cf. Allen v. Leybourne, 190 So.2d 825 (Fla. 3d DCA 1966).
We have considered the other points of appellant Calvary Church, which are directed to the findings of the trial court, and hold that they do not present reversible error.
Appellant's fifth point urges that the trial court erred in awarding attorney's fees to the plaintiffs for the prosecution of this action. We agree and reverse the postjudgment order allowing attorney's fees. See cases cited at 9A Fla.Jur. Damages § 79. The exception set out in Milohnich v. First National Bank of Miami Springs, 224 So.2d 759 (Fla. 3d DCA 1969), is not applicable under the facts of the instant case.
Affirmed in part; reversed in part.